SAGINAW PRODUCTS CORPORATION *v.*
ALFRED L. CAVALLO
(13965)

Dupont, C. J., and O'Connell and Schaller, Js.

Argued January 24—decision released March 26, 1996

*Guy R. DeFrances, Jr.*, for the appellant (defendant).

*Richard W. Tomc*, for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals from a judgment rendered in favor of the plaintiff, following a court trial, for $41,234.52.[1] The defendant claims that the trial

[1] The precise judgment amount is unclear. The plaintiff is seeking $41,234.52, and, because that amount is less than the amount that the defendant understood the judgment to be, we use it for the purposes of this decision.

court improperly rendered judgment that surpassed the relief sought in the complaint and also improperly determined that the plaintiff was a creditor of the defendant's corporation. We affirm the judgment of the trial court.

The following facts are necessary for the disposition of this appeal. The defendant was the president, sole director and only shareholder of C & S Ball Bearing Machinery & Equipment Corporation of America (C & S), a Connecticut corporation. On or about January 15, 1988, the plaintiff purchased steel balls from C & S. When the balls proved defective, the plaintiff wrote to the defendant in his capacity as president of C & S. This letter referred both to prior correspondence and the prospect of litigation if an amicable settlement was not reached.

The defendant owned the building in which C & S was located and in 1989 C & S paid the defendant $41,670 in rent. On September 12, 1989, C & S liquidated all its machinery and equipment at an auction that yielded $398,759.75. The defendant paid himself $25,003 from the sale proceeds. The plaintiff received nothing from the proceeds.

The plaintiff obtained a judgment against C & S in Michigan for $39,151.83[2] and then sued C & S in Connecticut on the Michigan judgment. On June 6, 1990, the Connecticut court rendered judgment for the plaintiff for $39,151.83 plus interest of $1882.69 and costs of $200.[3] The plaintiff obtained property and bank executions against C & S, which were returned unsatisfied.

On March 1, 1994, the plaintiff commenced this action in three counts against the defendant in his individual

[2] *Saginaw Products Corp.* v. *C & S Ball Bearing Machinery & Equipment Corp. of America,* Circuit Court for the County of Saginaw, Docket No. 89-386081-CK-1 (December 18, 1989).

[3] *Saginaw Products Corp.* v. *C & S Ball Bearing Machinery & Equipment Corp. of America,* Superior Court, judicial district of New Haven at Meriden, Docket No. CV90-235782S (June 6, 1990).

capacity. In the first count, the plaintiff claims that the defendant caused C & S to pay himself a distribution after it became a C & S creditor in violation of General Statutes § 33-321.[4] In the second count, the plaintiff alleges that the defendant, as a director of C & S, breached his fiduciary duty to the plaintiff as a creditor by taking a distribution knowing that C & S lacked funds to pay the plaintiff. In the third count, the plaintiff alleged that the defendant, as a C & S shareholder, took a distribution in violation of General Statutes § 33-359.

The case was tried to the court, which rendered judgment in favor of the plaintiff on all counts for $41,234.52 with interest from July 15, 1990.

I

The defendant first claims that the plaintiff's pleadings did not seek recovery beyond the $25,003 received by the defendant on October 9, 1989. Additionally, the defendant complains that the trial court found the defendant personally liable for the corporate debt despite the plaintiff's failure to plead a cause of action seeking to pierce the corporate veil.

A

It is axiomatic that a plaintiff's right of recovery is limited to the allegations of its complaint. *Montano* v. *Kin-Therm, Inc.*, 4 Conn. App. 187, 190–91, 493 A.2d 266 (1985). "[Any] judgment, to be adequate as such, must conform to the pleadings, the issues and the prayers for relief. . . . " (Citation omitted; internal quota-

---

[4] General Statutes § 33-321 provides in relevant part: "(b) In addition to any other liabilities imposed by law upon directors of a corporation: (1) Directors who vote for any distribution of assets of a corporation to its shareholders in violation of this chapter . . . in liquidation, or otherwise, shall be jointly and severally liable to make payment to the corporation to the extent of (A) claims of creditors existing at the date of such vote who obtain judgment against such corporation on which execution is returned unsatisfied . . . ."

tion marks omitted.) *New Haven* v. *Mason*, 17 Conn. App. 92, 96, 550 A.2d 18 (1988). We will reverse a judgment only if it is based on a different cause of action from that alleged in the complaint. *Francis* v. *Hollauer*, 1 Conn. App. 693, 695, 475 A.2d 326 (1984).

Our examination of the complaint does not disclose a factual predicate to support the defendant's claim of material variance between the complaint and the judgment. Paragraphs seven, eight and nine of the complaint allege that C & S sold substantially all of its assets at auction and that the defendant paid himself $25,003 plus other shareholder distributions after the plaintiff became a creditor of C & S.[5] The plaintiff's demand for relief also includes a claim for other shareholder distributions in addition to the $25,003 distribution.[6] Such "other distributions" claimed to be received by the defendant include the $41,670 in rental payments.[7]

We conclude that the conclusions of the trial court and the judgment it rendered were within the scope of the pleadings and claims for relief.

B

The defendant also argues that the trial court improperly found the defendant personally liable for the corpo-

---

[5] Paragraphs seven, eight and nine of the complaint provide:

"7. On or about September 12, 1989, C & S sold substantially all of its assets at an auction which proceeds exceeded $400,000.00.

"8. From the auction proceeds, defendant caused C & S to pay himself $25,003.00. Said payment was a shareholder distribution upon liquidation of the assets of C & S.

"9. Upon information and belief, defendant caused C & S to pay himself *other shareholder distributions* after plaintiff became a creditor of C & S." (Emphasis added.)

[6] The complaint contained the following claims for relief. "1. Money damages; 2. An order from this Court directing defendant to return to C & S $25,003.00 and such other shareholder distributions he received after plaintiff became a creditor."

[7] The trial court found that the lease between C & S and the defendant was a sham and thus the rental payments were wrongful distributions that should be subject to the claims of creditors.

ration's debt although no cause of action seeking to pierce the corporate veil was pleaded. The defendant's liability, however, was not premised on his position as an officer of the corporation, but rather on his statutory liability as director and shareholder. General Statutes § 33-282 et seq. Section 33-321 (b) (1) provides that a director of a corporation in liquidation who votes for distribution of assets in excess of the claims of creditors is liable to reimburse the corporation to the extent of the distribution. Section 33-359[8] provides that any shareholder of a corporation in liquidation who receives a distribution, knowing it to be improper, is liable to creditors of the corporation. The defendant in the present case was both a director who voted for the improper distribution and a shareholder who received it. Accordingly, the trial court properly imposed personal liability on the defendant pursuant to the Connecticut Stock Corporation Act.

## II

The defendant next argues that the trial court improperly found that the plaintiff was a creditor of the defendant's corporation. To impose director liability under § 33-321 (b) (1), the creditors must be "existing at the date of such [distribution] vote . . . ." To impose shareholder liability under § 33-359, the creditor must be "existing at the time of distribution . . . ." Both statutes also require that the creditor must "obtain judgment against [the] corporation on which execution is returned unsatisfied . . . ."

Following the defendant's argument to its logical conclusion, we would need to construe these statutes to

[8] General Statutes § 33-359 provides in relevant part: "Any shareholder who receives any distribution of assets from a corporation . . . in liquidation or otherwise, and has accepted or received such distribution knowing it to be improper shall be liable for the amount so received: (1) To any creditors existing at the time of such distribution who obtain judgment against such corporation on which execution is returned unsatisfied . . . ."

mandate that a creditor must have reduced its claim to judgment and have an execution returned unsatisfied at the time of the vote of the directors or the distribution to the shareholders. To the contrary, the plain language of the statutes clearly requires only that the claim be in existence at the time of the vote or distribution, not that a judgment be obtained. When the words of a statute are clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. *Rose v. Freedom of Information Commission*, 221 Conn. 217, 225, 602 A.2d 1019 (1992). We are not persuaded by the defendant's statutory construction argument because it contradicts the plain meaning of the statutes.

Moreover, it is readily apparent that under most circumstances the defendant's interpretation would render the statutes meaningless. Presumably, if a judgment was obtained and an execution issued before the assets were distributed, they would be seized pursuant to the execution and the execution would not be returned unsatisfied. We will not presume that the General Assembly intended to enact a meaningless or ineffective law. *State v. Siano*, 216 Conn. 273, 278, 579 A.2d 79 (1990).

In compliance with the statutes, the plaintiff obtained a judgment against C & S following the wrongful distribution, and only when an execution was returned unsatisfied did it seek a personal judgment against the defendant. The trial court properly held both that the plaintiff was a creditor and the subsequent distribution to the defendant was wrongful.

## III

Because we have concluded that the defendant is indebted to the plaintiff under the Connecticut Stock Corporation Act, we need not discuss the plaintiff's remaining claim that the defendant breached a common law fiduciary duty.

The judgment is affirmed.

In this opinion the other judges concurred.