SCOVILL MANUFACTURING COMPANY *v.* COMMISSION ON CIVIL RIGHTS OF THE STATE OF CONNECTICUT

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued October 13—decided November 30, 1965

*John S. Murtha,* with whom was *Brandon J. Hickey,* for the appellant (plaintiff).

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the appellee (defendant).

MURPHY, J. Johnny L. Trawick, a Negro, unsuccessfully applied for employment at the Scovill plant. He filed a complaint with the civil rights commission on June 10, 1963, alleging that the company discriminated against him because of his race. The commission investigated but did not prosecute Trawick's complaint. Instead, on January 8, 1964, the commission issued its own complaint against Scovill in which the commission charged Scovill with discriminating against Trawick by refusing to hire him because he had filed his complaint with the commission. A hearing tribunal found that, as alleged by the commission, Scovill had violated the Fair Employment Practices Act, and it issued a cease and desist order. Scovill filed a petition in the Superior Court to review the hearing tribunal's order; General Statutes § 31-128 (d); and from an adverse judgment by that court it has taken this appeal.

Trawick sought employment at the Scovill plant on four occasions prior to June 5, 1963, when the company's interviewer gave him an application which he filled out and filed. He did not seek any particular job and had no special qualifications.

The interviewer found him to be belligerent, argumentative, complaining, "with a chip on his shoulder" and not physically qualified to do the heavy lifting required for "bull work." He was not employed since the interviewer concluded that he would not make a good employee. On June 10, he filed his complaint with the commission, and it was investigated by the commission's investigators. Thereafter, Trawick was interviewed by the company's employment manager, who reviewed his application and told him that he would not be hired merely because he had filed a complaint with the commission. Trawick returned to the company about a week later on June 19 for another interview by a senior job interviewer but was not hired. There is no evidence that Trawick has sought or been denied employment at the Scovill plant since that date.

According to the commission's records, its representatives, on June 19 and July 30, in person or by telephone, told the company's representatives that, unless the company gave a positive indication of the date when the company would employ Trawick, further action by the commission would be taken. The company stated that it would not be pressured into such action.

On November 13, 1963, Arthur L. Green, field representative, and Mario Vigezzi, supervisor of the commission's enforcement division, met again with company representatives at which time the commission's representatives stated that they were still investigating the Trawick complaint. Vigezzi asserted that the commission was quite concerned about the company's attitude and felt that not only had the company initially discriminated against Trawick on May 20, 1963, the first day he sought employment, but has been discriminating against him because he

had filed his complaint. In his testimony before the hearing tribunal, Green testified that on June 13, the date of his second visit to the employment manager's office, the investigation of Trawick's complaint had been completed. Thomas F. Henry, the executive secretary of the commission, testified before the hearing tribunal that on June 25 there was no impression on the part of himself, Green, Vigezzi and Angelo Serluco, the other investigator, that Trawick was being denied employment because he had filed a complaint with the commission.

The commission on civil rights is constituted under, and its authority is governed entirely by, the provisions of the Fair Employment Practices Act. General Statutes §§ 31-122–31-128. The act bars discrimination in the employment of an individual because of race, color, religious creed, age, national origin or ancestry. § 31-126 (a). Upon the filing of a complaint, the chairman of the commission is directed to refer the complaint to a commissioner or investigator for prompt preliminary investigation. If the investigator determines that there is reasonable cause to believe that an unfair employment practice, as alleged in the complaint, has been or is being committed, he is immediately to attempt to eliminate it by conference, conciliation and persuasion. If the investigator fails to eliminate the practice, he must certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general. General Statutes § 31-127. The investigator is barred by statute from disclosing what occurred in the course of his attempts to adjust the complaint. Ibid.

Trawick's complaint of discrimination because of race was investigated by Green, a field representative of the defendant. If, after that investigation,

Green reasonably believed that Scovill had refused employment to Trawick because of his race and was then unsuccessful in persuading Scovill to hire him, Green had no discretion but to process the Trawick complaint so that the chairman of the commission could appoint a hearing tribunal to consider Trawick's complaint. General Statutes § 31-127. The language of the statute demands prompt action by the commission and its representatives so that the interested parties can know their status and be governed accordingly. In addition, the commission's own regulations call for prompt action and dismissal of the complaint if no violation of the act is found. Conn. Dept. Regs. §§ 31-125-10, 31-125-11. The failure of the commission expeditiously to prosecute Trawick's complaint caused the trial judge to infer that the commission recognized that that complaint was without particular merit. The record fully confirms the inference.

Under General Statutes § 31-127, the commission may issue a complaint whenever it has reason to believe that any person has been engaged or is engaging in an unfair employment practice. The complaint which is the subject matter of this proceeding was issued under this authority. Such a complaint would require action by the commission itself, and there is nothing in this record to indicate consideration of the complaint by the members of the commission. It was, however, signed and sworn to by the chairman of the commission, although the source of his information is not disclosed. It alleges that Scovill is discriminating against Trawick by refusing to employ him because he filed his complaint against the company on June 10, 1963. The commission's complaint is dated January 8, 1964. No date other than the date of Trawick's complaint

is mentioned in it. It is defective in that it does not contain the date or dates of the alleged unfair employment practice as required by the commission's own regulation. Conn. Dept. Regs. § 31-125-5 (e).

General Statutes § 31-127 imposes a ninety-day limitation, which requires all complaints to be filed within that period of time after the alleged act of discrimination occurs. Nowhere in the statement of facts or the finding or the conclusion of the hearing tribunal does it appear when Scovill is alleged to have refused employment to Trawick because he had filed his complaint. Thus, we have not only a defective complaint but also a defective finding. The attempt by the commission to claim, in the review by the trial court, that the ninety-day period ran from the refusal of the company to give in to the pressure of the commission's representatives on November 13, 1963, is ridiculous. The last date upon which Trawick was denied employment was June 19, 1963. If the limitation period on this particular complaint was to run at all, it would have started not later than that date. There had been no activity on Trawick's complaint after August 6, 1963, when Vigezzi and Green inspected employment applications of male persons hired by Scovill between May and July, 1963. Then followed the November 13 meeting. It demonstrated a determined effort on the part of the commission's representatives to do indirectly that which legally they could not do directly. It was ineffectual to put into operation the ninety-day period vital to a legitimate complaint. In this case it adds credence to the company's claim that the commission, through its representatives, was practicing the discrimination which it was constituted to overcome.

There is error, the judgment is set aside and the case is remanded with direction to set aside the order of the hearing tribunal and to sustain the plaintiff's appeal.

In this opinion the other judges concurred.